## UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **No. CR-24-277-G** |
| **-vs-** | **)** | |
| | **)** | |
| **DALLAS JASON FORD,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## REPORT AND RECOMMENDATION

On August 22, 2025, the undersigned conducted a competency hearing regarding Defendant Dallas Jason Ford ("Defendant") pursuant to 18 U.S.C. § 4247(d). As set forth fully below, the undersigned recommends that the Court find that a preponderance of the evidence establishes Defendant is competent "to the extent that he is [ ]able to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241.

### I.    Procedural and Factual Background

The grand jury indicted Defendant with one count of possession of a prohibited object, specifically a weapon, while he was an inmate at the Federal Transfer Center in Oklahoma City, in violation of 18 U.S.C. § 1791(a)(2). (Doc. 1). The Court arraigned Defendant on August 23, 2024, and appointed counsel. (Docs. 5, 6). Defendant waived his detention hearing and consented to an order of detention. (Doc. 7). On September 30, 2024, defense counsel filed an Unopposed Motion for Determination of Competency, attaching evidence that in 2012 Defendant had been determined to be incompetent in the

17th Judicial District in and for Broward County, Florida.  (Doc. 11).  In conjunction with that Motion, counsel for Defendant also filed a Notice of Insanity Defense.  (Doc. 12).  The same date, the government filed a Motion for Psychiatric or Psychological Evaluation. (Doc. 13).  On October 4, 2024, the Court referred all three motions to the undersigned magistrate judge.  (Doc. 15).  The Motions were granted on October 4, 2024, and March 11, 2025, committing Defendant to the custody of the Attorney General for psychiatric and psychological evaluations — first on the issue of insanity and then on the issue of competency.  (Docs. 16, 20).

Defendant was evaluated at the Metropolitan Correctional Center in Chicago, Illinois, from October 18, 2024, to January 2, 2025, by Dr. Robin Watkins, a forensic psychologist for the Bureau of Prisons.  (Doc. 17, at 1).  On February 25, 2025, the court and counsel received Dr. Watkins' Forensic Evaluation concerning Defendant's mental state at the time of the alleged offense.  (*Id*.)  Dr. Watkins concluded that Defendant "was not suffering from a mental disease or defect that would render him unable to appreciate the nature and quality or the wrongfulness of his actions at the time of the alleged offense." (*Id*. at 16).  Neither the government nor the defense contest this conclusion.

Defendant was evaluated for a second time at MCC Chicago from March 18, 2025, to May 6, 2025, again by Dr. Watkins.  (Doc. 21, at 1).  On May 28, 2025, the court and counsel received Dr. Watkins' Forensic Evaluation concerning Defendant's competency to proceed to trial on his current criminal charge.  (*Id*. at 1).  Dr. Watkins evaluated Defendant under the "standard for competency to stand trial [which] consists of both a

factual and rational understanding of the nature and consequences of court proceedings, as well as the ability to assist in one's own defense." (*Id*. at 16).

Dr. Watkins observed that Defendant was aware he had been referred for evaluation. "He specified that he was originally sent to MCC Chicago for evaluation of 'insanity at the time of the offense,' and that the present evaluation was for a different question. He learned this information when it was explained to him and he retained it over time." (*Id*.) Defendant directed Dr. Watkins regarding how to look for his 2012 finding of incompetency in a Florida court. (*Id*.) Dr. Watkins was able to follow his instructions, and she verified that the dates and information he provided were "accurate and precise." (*Id*.) Dr. Watkins noted that although the court documents "indicate[d] the charges were dismissed without prejudice, no information was provided regarding [Defendant's] competency or restorability." (*Id*.) Dr. Watkins noted that Defendant understood his current criminal charge and that he understood the difference between a felony and misdemeanor charge, and he understood the meaning of not guilty and guilty pleas. (*Id*. at 17). Defendant "accurately described the roles and responsibilities of various court officials, including the defense attorney, prosecutor, and jury." (*Id*.) Dr. Watkins noted that

> [Defendant] understood his right to avoid self-incrimination, and he was able to identify the associated constitutional amendment. He described having motivation to help himself in the legal process. . . . [Defendant] discussed the concept of a plea bargain, describing it as "whatever the prosecutor, your lawyer, and you work out." He described the potential benefits of a plea agreement for each side. He knew the right to a trial is forfeited by a defendant who accepts a plea agreement, and he was able to learn and retain information about additional rights over a time delay.

. . . [Defendant] understood the need to communicate with his attorney
regarding his history and the facts of the case, and he expressed willingness
to do so.

(*Id.* at 18).  Dr. Watkins summarized her findings as follows:

> [Defendant] displayed adequate factual understanding of court procedures,
> and was able to learn and retain new information with which he was
> previously unfamiliar. He also demonstrated a rational understanding of
> these procedures, showing the ability to apply the concepts relevantly to his
> case.  Finally, he appears to possess the capacity to cooperate with counsel.
> He was highly assertive while simultaneously demonstrating a pleasant and
> congenial demeanor with this examiner.  He recognized the value of working
> with an attorney, and he described motivation to work with his attorney.
> Moreover, [Defendant] does not meet criteria for a mental disorder that
> would impair his ability to understand the nature and consequences of the
> proceedings against him, or to assist properly in his defense. Based on the
> totality of these findings, it is the opinion of the undersigned that despite the
> presence of Antisocial Personality features and substance use disorders,
> those disorders do not presently impair [Defendant's] ability to understand
> the nature and consequences of the proceedings against him, or to assist
> properly in his defense. Consequently, it is the opinion of the undersigned
> that [Defendant] is competent to proceed at this time.

(*Id.* at 19).

The undersigned held the competency evidentiary hearing on August 22, 2025.

(Doc. 29).  Assistant United States Attorney (AUSA) Elizabeth Joynes appeared on behalf

of the United States to advocate a finding of competency in accordance with Dr. Watkins'

evaluation and opinion.  (*Id.*)  Defendant appeared with counsel, Michael Noland, to

contest the finding of competency.  (*Id.*)

## II.    Jurisdiction under 18 U.S.C. § 636

The Tenth Circuit has not expressly addressed the authority of a magistrate judge to

issue competency decisions with or without a referral order.  *See, e.g., United States v.*

*Archuleta*, 218 F. App'x 754, 755 (10th Cir. 2007) (explaining, without commenting on

the magistrate judge's authority to do so, that "[a] magistrate judge held a competency hearing in March 2006 and determined that Archuleta was not competent to stand trial and ordered that he be remanded to the custody of the Bureau of Prisons for restoration of competency"); *United States v. Morrison*, 415 F.3d 1180, 1185 (10th Cir. 2005) ("On appeal Defendant raises two issues. His first ground for reversal, which was not raised below, is that the district court was required to exercise *de novo* review of the magistrate judge's order [requiring forced medication of the defendant] on the facts as well as the law. Defendant may well be correct. There is authority for the proposition.").  The practice in this Court and many others is for magistrate judges to conduct competency hearings and make their determinations by Order rather than Report and Recommendation. *E.g.*, *United States v. Bertschy*, No. 20-296-J, Doc. 40; *United States v. Waner*, No. 20-116-SLP, Doc. 28; *United States v. Redbird*, No. 19-347-F, Doc. 32.  However, this Court has also found that magistrate judges lack such authority.  *United States v. Benford*, No. M-98-21-H, Order (W.D. Okla. May 20, 1998) ("There is no authority under [28 U.S.C. § 636], the Federal Rules of Criminal Procedure or the Local Court Rules for a United States Magistrate Judge to conduct a competency hearing under [18 U.S.C. § 4241 *et. seq.*] without having been designated to do so by an Article III Judge or otherwise assigned.").

The undersigned has elected to proceed with a Report and Recommendation, "to fully preserve the prerogative" of the reviewing district judge, "and to provide adversely-affected parties with equal opportunity for review."  *United States v. Murray*, 2008 WL 3287036, at *1 n.1 (E.D. Tex. Aug. 6, 2008); *see also United States v. Madison*, 2018 WL 6818925, at *1 (M.D. Fla. Dec. 28, 2018); *United States v. Moreno*, 2013 WL 6019269, at

*2 (D. Nev. Nov. 13, 2013) ("The court will issue a Report of Findings and Recommendation rather than an order because the scope of a magistrate judge's authority on the issues before the court is unclear.").

## III.    The Undersigned Recommends That Defendant Be Found Competent To Stand Trial.

Dr. Watkins testified via video-teleconference at the evidentiary hearing regarding Defendant's competency held on August 22, 2025.  AUSA Joynes conducted direct examination, and Mr. Noland cross-examined.  Mr. Noland stipulated that that Dr. Watkins had the credentials, qualifications, and experience to render an opinion as to Defendant's competency.  Neither party offered any additional evidence.

On direct examination, Dr. Watkins adopted the observations and conclusions of her May 21, 2025, Forensic Evaluation, including her final opinion that Defendant was competent to stand trial.  She noted that she observed and evaluated Defendant during two separate periods, from October 18, 2024, to January 2, 2025, and again from March 18, 2025, to May 6, 2025, and that he presented consistently from the earlier period to the later period.  She reiterated her observations that at each of her meetings with him, Defendant was appropriate, polite, cordial, alert, oriented, pleasant, and cooperative, with unremarkable mental status.  She stated that she observed no evidence of delusions and no evidence that he was responding to internal stimuli such as hallucinations.  She stated that previous testing showed no intellectual disability or cognitive impairment.  She explained her opinion that although she did not diagnose Defendant with malingering, Defendant "may have feigned symptoms at certain points in his evaluation period for the purpose of

secondary gain, including psychotic symptoms as well as reported deficits related to competency." (Doc. 21, at 15). She referred specifically to an instance in which Defendant "admit[ed] to fabricating a mental health event to buy time" before an institutional transfer. (*See id*. at 6-7).

Dr. Watkins specifically addressed the 2012 finding of incompetency in a Florida court, stating that it did not change her opinion as to Defendant's present competency. She emphasized that in her professional experience, competency is a time sensitive determination that can change and evolve from time to time. She stated that Defendant was diagnosed with Antisocial Personality Disorder; Stimulant (Cocaine) Use Disorder, Severe, in a controlled environment; Opioid Use Disorder, Severe, in a controlled environment; and Cannabis Use Disorder, Mild, in a controlled environment. (*Id*. at 15). She opined, however, that these diagnoses did not impact Defendant's present or future competency to stand trial.

On cross-examination, Mr. Noland questioned Dr. Watkins on the following points, among others:

- an instance of Defendant cutting his scrotum in October 2024 because he was hallucinating (*see* Doc. 17, at 8; Doc. 21, at 5);

- the 2012 determination of incompetency and Defendant's apparent civil commitment from 2012 to 2020;

- the fact that Defendant has consistently been prescribed mental health medications; and

- Defendant's tendency to "fixate" on certain irrelevant topics of conversation and is difficult to re-direct to pertinent topics, such as his current criminal charge.

7

Dr. Watkins testified that none of these factors caused her to change her opinion that Defendant was competent to stand trial. Dr. Watkins conceded that Defendant's antisocial personality disorder may cause him to prioritize his own, possibly irrelevant, goals for a conversation over the goals of another person, which could affect his ability to assist Mr. Noland with his defense. However, she opined that while Defendant may at times choose not to discuss what Mr. Noland wants to discuss, Defendant does not lack the capacity to assist his counsel. On redirect by AUSA Joynes, Dr. Watkins stated that in her conversations with Defendant, while he occasionally was motivated to discuss irrelevant topics, he has the capacity to stay on topic, and she did not find that she had to re-direct him very often.

In closing arguments, AUSA Joynes endorsed Dr. Watkins' qualifications, methodologies, and ultimate opinion that Defendant was competent to stand trial. Mr. Noland re-emphasized Defendant's previous determination of incompetency and his self-harm behaviors, but focused his argument primarily on his own experience with Defendant, proffering that Defendant's tendency to fixate on irrelevant topics and inability to stay focused on discussing his present criminal case cause Defendant to be unable to rationally assist in his own defense. Mr. Noland opined that he did not believe that Defendant was making a choice to be unhelpful or distracted. Mr. Noland argued with reference to the competency standard set forth in *Dusky v. United States*, 362 U.S. 402 (1960), "whether [Defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Id*. at 402.

8

After careful consideration of the record, to include the Indictment (Doc. 1), Pretrial Services Report (Doc. 3), Dr. Watkins' two Forensic Evaluations (Doc. 17, 21), Dr. Watkins' testimony on direct and cross-examination, statements of counsel, and relevant legal authority, the undersigned recommends that the Court finds that a preponderance of evidence establishes Defendant is competent "to the extent that he is [ ]able to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241.

## IV.    Recommendation and Notice of Right to Object

For the reasons set forth above, the undersigned recommends that the Court find Defendant competent to stand trial.

**The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court on or before Tuesday, September 2, 2025,** in accordance with 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2).  The undersigned advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE